FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2024 NOV -8 AM 10: 18
MARGARET BOTKINS, CLERK
CHEYENNE

**BILLIE LM ADDLEMAN, #6-3690**
**TYSON R. WOODFORD, #8-6650**
Hirst Applegate, LLP
P.O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
twoodford@hirstapplegate.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

GREGG JONES,

Plaintiff,

vs.

MIDLAND NATIONAL LIFE INSURANCE COMPANY,

Defendant.

Civil No. 24-CV-223-S

## *COMPLAINT*

Plaintiff Gregg Jones ("Plaintiff" or "Mr. Jones"), by and through its undersigned counsel, hereby complains against Defendant Midland National Life Insurance Company and alleges as follows:

### I. NATURE OF THE ACTION

1. This is a first party insurance action asserting claims for declaratory judgment on the terms of the insurance contract, breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, estoppel, and punitive damages for insurer conduct in unilaterally reducing life insurance coverage for Plaintiff based on Defendant's unilateral mistake.

2. In 2006, Plaintiff submitted an application for a Universal Life Insurance Policy to Defendant. All the information in the application was accurate.

3. Shortly thereafter, Defendant issued a Universal Life Insurance Policy to Plaintiff Gregg Jones with a death benefit of $500,000.00.

4. On July 17, 2024, eighteen years later, Defendant sent Plaintiff a letter unilaterally revising the terms of Plaintiff's policy and reducing the contract's death benefit from $500,000.00 to $393.323.00.

## II. PARTIES AND JURISDICTION

5. Mr. Jones is an individual residing in Laramie County, Wyoming.

6. Defendant Midland National Life Insurance Company is an insurance company that conducts business in the State of Wyoming. Upon information and belief, Defendant is an Iowa corporation with its principal place of business is West Des Moines, Iowa.

7. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action is between corporate/individual citizens of different states, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendants because Defendants conduct business in the District of Wyoming, and a substantial part of the acts, omissions, and breaches giving rise to the claims occurred in the District of Wyoming.

9. Venue in the District of Wyoming is proper under 28 U.S.C. § 1391.

## III. FACTS

10. Plaintiff incorporates by reference all preceding paragraphs.



HIRST APPLEGATE, LLP
LAW OFFICES
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

11. Mr. Jones has been a Midland National Life Insurance Company customer for at least twenty-three (23) years.

12. In 2001, Mr. Jones submitted a complete application for life insurance to Defendant, including his date of birth. Subsequently, Mr. Jones purchased a life insurance policy from Defendant with a $100,000.00 death benefit.

13. Mr. Jones paid premiums on the 2001 policy for approximately four years, eventually allowing the policy to lapse after he purchased the subject 2006 Universal Life Insurance Policy ("2006 Policy") from Defendant. *See 2006 Policy*, attached as **Exhibit A**.

14. Again, Mr. Jones submitted a complete and accurate application, including his date of birth, for the 2006 Policy. This time, Defendant sold Mr. Jones a policy with a $500,000.00 death benefit.

15. Mr. Jones has consistently paid his premiums for the 2006 Policy, with a $500,000.00 death benefit, without fail.

16. In reliance on Defendant's representations regarding the terms of the 2006 Policy and the $500,000.00 death benefit, Plaintiff let his earlier 2001 policy lapse.

17. Now, after more than seventeen (17) years of collecting premiums, Defendant unilaterally reduced Mr. Jones' death benefit by $106,677.00.

18. There is no dispute that Defendant offered Mr. Jones a Universal Life Insurance Policy with a death benefit of $500,000.00 in 2006.

19. There is no dispute that Mr. Jones accepted that offer and consistently paid his premiums.



HIRST APPLEGATE, LLP
LAW OFFICES
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

20. There is no dispute that Mr. Jones accurately stated his date of birth in his application. *See Application*, attached as **Exhibit B**.

21. Mr. Jones reached out to Defendant on multiple occasions for information on why his death benefit was unilaterally reduced.

22. Eventually, Defendant informed Mr. Jones that his death benefit was reduced due to an alleged misstatement of his age, citing to Section 3.15 of the 2006 Policy "Misstatement of Age or Sex."

23. Mr. Jones was born on , 1956.

24. Mr. Jones' application in 2006 accurately stated his birthdate as , 1956 and correctly stated his age at the time, forty-nine (49). *See Exhibit B*.

25. Mr. Jones made no misstatement of his age or sex.

26. Based on Mr. Jones' application, Defendants issued the 2006 Policy.

27. The 2006 Policy issued by Defendant incorrectly noted Mr. Jones' age, which was not noticed or corrected by either party for more than seventeen (17) years. *See Exhibit A*, at p. 2.

28. Despite Defendant making this unilateral mistake regarding Mr. Jones; age, Defendants refuse to reinstate Mr. Jones' $500,000.00 death benefit on the 2006 Policy.

29. Defendants' actions are in bad faith and have forced Mr. Jones to incur damages and costs in seeking to enforce the terms of the contract sold to him.

## IV. FIRST CAUSE OF ACTION: DECLARATORY ACTION

30. Plaintiff incorporates by reference all preceding paragraphs.

31. Defendant offered Mr. Jones the 2006 Policy with a $500,000.00 death benefit based on the application completed by Mr. Jones.

32. Mr. Jones included his correct birthdate in that application.

33. Mr. Jones accepted the terms of the 2006 Policy, as they were offered by Defendant.

34. Defendant unilaterally reduced Mr. Jones' death benefit by more than $100,000.00 based on an alleged misstatement of age.

35. Mr. Jones never misstated his age to Defendant.

36. Any mistake regarding Mr. Jones' age was a unilateral mistake by Defendant.

37. The provisions of the 2006 Policy do not allow Defendant to unilaterally reduce Mr. Jones' death benefit under these circumstances.

38. Defendant must reinstate Mr. Jones' death benefit under the 2006 Policy to $500,000.00.

## V. SECOND CAUSE OF ACTION: BREACH OF CONTRACT

39. Plaintiff incorporates by reference all preceding paragraphs.

40. As set forth above, in return for premiums, Defendant sold Mr. Jones an insurance policy, wherein Defendant promised to provide a death benefit of $500,000.00.

41. Mr. Jones provided Defendant with an accurate account of his date of birth.

42. Defendant has a duty to provide the agreed upon death benefit of $500,000.00 to Mr. Jones under the express terms of the contract.

43. Defendant unilaterally reduced Mr. Jones' death benefit by more than $100,000.00 in breach of its 2006 Policy.

44. As a result of Defendant's actions, Mr. Jones stands to be deprived of substantial benefits under the 2006 Policy, for which he has paid premiums, causing Mr. Jones to suffer significant damages in an amount to be proven at trial.

45. Mr. Jones is entitled to recover his actual damages as well as incidental and consequential damages resulting from Defendant's breach, including his attorneys' fees and costs incurred in enforcing the 2006 Policy.

## VI. THIRD CAUSE OF ACTION: FIRST-PARTY INSURANCE BAD FAITH

46. Plaintiff incorporates by reference all preceding paragraphs.

47. Defendant, as a first-party life insurer, is under a duty to act reasonably with respect to Mr. Jones, its insured, and to reinstate Mr. Jones' death benefit of $500,000.00 under the 2006 Policy.

48. Defendant breached its duty by reducing Mr. Jones' death benefit without any reasonable basis.

49. Defendant willfully and wantonly misinterpreted the terms of the 2006 Policy and unilaterally reduced Mr. Jones' death benefit by more than $100,000.00.

50. Defendant's conduct in reducing the death benefit, after receiving more than seventeen (17) years of premium payments, is akin to fraud or conversion.

51. Defendant willfully and wantonly claim Mr. Jones misstated his age, despite concrete proof that he accurately provided his date of birth in the application for the 2006 Policy.

52. Upon information and belief, Defendant seeks to profit from its own unilateral mistake of fact.

53. Mr. Jones is entitled to a reinstatement of his $500,000.00 death benefit as well as incidental and consequential damages resulting from Defendant's bad faith conduct, such as Mr. Jones' attorneys' fees and costs.

## VII. FOURTH CAUSE OF ACTION: UNJUST ENRICHMENT

54. Plaintiff incorporates by reference all preceding paragraphs.

55. Mr. Jones paid to Defendant valuable premiums for more than seventeen (17) years for the $500,000.00 death benefit associated with the 2006 Policy.

56. Defendant accepted, used, and enjoyed Mr. Jones' premium payments.

57. Defendant understood that Mr. Jones' expected his $500,000.00 death benefit to remain in effect throughout the term of the 2006 Policy—that is, until Mr. Jones' passing or his one-hundredth birthday.

58. By accepting, using, and enjoying Mr. Jones' premium payments and unilaterally lowering Mr. Jones' death benefit, Defendant would be unjustly enriched.

## VIII. FIFTH CAUSE OF ACTION: ESTOPPEL

59. Plaintiff incorporates by reference all preceding paragraphs.

60. Defendants promised or contractually agreed to pay Mr. Jones a death benefit of $500,000.00 under the 2006 Policy.

61. By offering or agreeing to the $500,000.00 death benefit, Defendants expected to induce Mr. Jones' payment of premiums.

62. Mr. Jones consistently paid his premiums for more than seventeen (17) years.

63. At no time during those seventeen plus (17+) intervening years did Defendant question the validity of the $500,000.00 death benefit in the 2006 Policy.

64. For the entire duration of the 2006 Policy, until Defendant unilaterally reduced Mr. Jones' death benefit, Mr. Jones paid his premiums with the reasonable expectation that should he die, the 2006 Policy would provide a $500,000.00 death benefit.

65. Injustice can only be avoided if the Court estops Defendant from lowering Mr. Jones' death benefit and enforces the agreed upon, promised, and expected $500,000.00 death benefit in the 2006 Policy.

## IX. PRAYER FOR RELIEF

1. Plaintiff incorporates by reference all preceding paragraphs.

2. As a direct and proximate result of Defendant's acts and/or omissions as described above, Mr. Jones sustained damages including damages related to Defendants' bad faith.

3. Plaintiff is entitled to collect the following damages:

   a. Declaratory judgment restoring Mr. Jones' $500,000.00 death benefit on the 2006 Policy.

   b. All actual damages suffered by Mr. Jones as a result of Defendant's breaches of contract in an amount to be determined at trial.

   c. Attorney's fees and costs.

   d. All compensatory and consequential damages suffered by Mr. Jones as a result of Defendant's bad faith conduct.

e. Pre- and post-judgment interest as permitted by law.

f. Such other further relief to which Mr. Jones may be justly entitled.

**JURY DEMAND**

Plaintiff hereby demands a six-person jury trial on all issues triable to a jury by filing this action in conjunction with the requisite fee.

Dated: 8 November 2024.

GREGG JONES, Plaintiff

BY: ______________________________

**BILLIE LM ADDLEMAN, #6-3690**
**TYSON R. WOODFORD, #8-6650**
OF HIRST APPLEGATE, LLP
Attorneys for Plaintiff
P.O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
twoodford@hirstapplegate.com

# *EXHIBIT A*



A Member of the Sammons Financial Group     *A Stock Company*

Principal Office: 4601 Westown Parkway, Suite 300, West Des Moines, IA 50266 • (515) 440-5500
Executive Office: One Midland Plaza, Sioux Falls, SD 57193 • (800) 923-3223

In this Policy, Midland National Life Insurance Company is referred to as "We", "Us", "Our", or the "Company". "You" and "Your" refer to the Owner.

<u>This is a legal contract between You and Us. Read it carefully.</u>

We agree to pay to the Beneficiary the Policy Proceeds upon the Insured's death prior to the Maturity Date while this Policy is in force. Payment will be made upon receipt at Our Executive Office of due proof of the Insured's death. If the Insured is living on the Maturity Date, the Net Cash Surrender Value will be paid to You. This agreement is subject to the terms of this Policy.

**CONSIDERATION** - This Policy is issued in consideration of any application(s) and payment of the first premium.

**RIGHT TO EXAMINE POLICY - It is important to Us that You are satisfied with this policy and that it meets Your insurance goals. Read it carefully. If You are not satisfied with it You may return it to Our Executive Office or to Your agent within 20 days after You receive it. We will then void it as of the Policy Date as though it was never issued and we will refund any premiums that have been paid.**

Issued and signed by Midland National Life Insurance Company at its Executive Office.

**President**     **Secretary**

**FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY**

**ADJUSTABLE DEATH BENEFIT**

**INSURANCE PAYABLE UPON DEATH BEFORE MATURITY DATE
PREMIUMS PAYABLE TO INSURED'S AGE 100**

**SEE THE "POLICY PROCEEDS" PROVISION TO DETERMINE
THE AMOUNT PAYABLE AT DEATH**

**NON PARTICIPATING - NOT ELIGIBLE FOR DIVIDENDS**

## Guide to Policy Provisions

**Section**
Face Page Right to Examine Policy

Schedules Schedule of Policy Benefits
Table of Surrender Charges
Corridor Percentage Table
Table of Guaranteed Monthly Cost of Insurance Rates
Additional Benefits Provided by Endorsement or Rider

**1 ............... Definitions**

**2 ............... Policy Proceeds**
2.1 ............ Payment of Proceeds
2.11 .......... Proceeds Payable
2.2 ............ Death Benefit
2.3 ............ Corridor Percentage

**3 ............... General Provisions**
3.1 ............ Contract
3.11 .......... Entire Contract
3.12 .......... Changes to Policy
3.13 .......... Incontestability
3.14 .......... Suicide
3.15 .......... Misstatement of Age or Sex
3.16 .......... Non-Participating
3.2 ............ Ownership and Beneficiary
3.21 .......... Owner's Rights
3.22 .......... Change of Owner and Contingent Owner
3.23 .......... Assignment
3.24 .......... Beneficiary
3.25 .......... Change of Beneficiary
3.26 .......... Beneficiary Death in Common Disaster
3.27 .......... Right to Request this Policy
3.28 .......... Termination

**4 ............... Premiums**
4.1 ............ Payment of Premiums
4.2 ............ Maximum Premium Limits
4.3 ............ No Lapse Guarantee Period
4.4 ............ No Lapse Guarantee Premium Requirement
4.5 ............ Continuation of Insurance
4.6 ............ Grace Period
4.7 ............ Additional Required Premium
4.8 ............ Reinstatement

**Section**
**5 ............... Right to Change the Death Benefit**
5.1 ............ Changes in Specified Amount
5.2 ............ Changes in Death Benefit Option

**6 ............... Policy Values**
6.1 ............ Policy Fund
6.2 ............ Cash Surrender Value
6.3 ............ Interest Rate
6.4 ............ Monthly Deduction
6.4.1 ......... Expense Amount
6.5 ............ Cost of Insurance
6.6 ............ Premium Load
6.7 ............ Cost of Insurance Rates
6.8 ............ Declared Rates & Charges
6.9 ............ Surrender Charge
6.10 .......... Interest Bonus
6.11 .......... Withdrawal of Cash Surrender Value
6.12 .......... Withdrawal Charge

**7 ............... Annual Report of Policy Status**

**8 ............... Policy Loans**
8.1 ............ Loan Requirements
8.2 ............ Loan Value
8.3 ............ Interest on Policy Loans
8.4 ............ Policy Loan Interest Rate
8.5 ............ Zero Cost Loans
8.6 ............ Policy Debt
8.7 ............ Loan and Repayment
8.8 ............ Excess Policy Debt

**9 ............... Maturity Date**

Copies of all applications and any Riders are attached.

L12349

## SCHEDULE OF POLICY BENEFITS

**OWNER:** GREGG D JONES
**POLICY NUMBER:** [redacted]

**INSURED:** GREGG D JONES
**POLICY DATE:** 06/02/2006

**SEX:** Male
**INSURED'S POLICY AGE ON POLICY DATE:** 47

**PLANNED PERIODIC PREMIUM:** $100.00 annually
**SPECIFIED AMOUNT:** $500,000

**NO LAPSE GUARANTEE PREMIUM:** $192.08 monthly
**PREMIUM CLASS:** Preferred Non-Smoker

**NO LAPSE GUARANTEE PERIOD:** Ends 06/02/2021

**BENEFICIARY:** As specified in the Application unless changed as provided in this Policy

**DEATH BENEFIT OPTION:** 1

| | |
|---|---|
| **POLICY EXPENSE CHARGE:** | MAXIMUM OF $5.00 PER MONTH IN ALL POLICY YEARS |
| **UNIT EXPENSE CHARGE:** | $0.1600 PER MONTH IN ALL POLICY YEARS* |
| **MAXIMUM PREMIUM LOAD:** | 7.5% OF PREMIUMS RECEIVED IN ALL POLICY YEARS |
| **MINIMUM GUARANTEED INTEREST RATE:** | 3.50% A YEAR |
| **MAXIMUM POLICY LOAN INTEREST RATE:** | 6.00% A YEAR PAYABLE IN ARREARS |
| **FIRST POLICY YEAR FOR ZERO COST LOANS:** | 11th |
| **MINIMUM SPECIFIED AMOUNT:** | $25,000 |
| **MINIMUM INCREASE AMOUNT:** | $25,000 |
| **MINIMUM WITHDRAWAL AMOUNT:** | $500 |
| **WITHDRAWAL CHARGE:** | $25.00, APPLIES TO 2ND WITHDRAWAL AND EACH SUBSEQUENT |

**SEE FOLLOWING TABLE OF SURRENDER CHARGES AND "SURRENDER CHARGE" IN SECTION 6.9.**

| DESCRIPTION OF BASE POLICY BENEFITS | MATURITY DATE |
|---|---|
| FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE | 06/02/2059** |

* The Unit Expense Charge may change based upon increases or decreases in the Specified Amount

** It is possible that coverage will lapse prior to the Maturity Date shown, if either no premiums are paid following payment of the first premium or subsequent premiums paid are insufficient to continue coverage to such date.

INQUIRIES REGARDING YOUR POLICY SHOULD BE DIRECTED TO YOUR AGENT, OR, IF HE OR SHE IS NOT AVAILABLE TO OUR EXECUTIVE OFFICE AT THE FOLLOWING ADDRESS:

MIDLAND NATIONAL LIFE INSURANCE COMPANY
ATTN: POLICYOWNER SERVICE
ONE MIDLAND PLAZA
SIOUX FALLS, SD 57193
TOLLFREE 1-800-923-3223

SCHEDULE OF POLICY BENEFITS (CONTINUED)
TABLE OF SURRENDER CHARGES
(per thousand of Specified Amount)

| Policy Year | Surrender Charge Factor | Policy Year | Surrender Charge Factor |
|---|---|---|---|
| 1 | 29.00 | 11 | 20.01 |
| 2 | 28.28 | 12 | 18.85 |
| 3 | 27.55 | 13 | 17.40 |
| 4 | 26.83 | 14 | 15.95 |
| 5 | 26.10 | 15 | 14.50 |
| 6 | 25.23 | 16 | 13.05 |
| 7 | 24.36 | 17 | 11.60 |
| 8 | 23.49 | 18 | 8.70 |
| 9 | 22.33 | 19 | 5.80 |
| 10 | 21.17 | 20 | 2.90 |
| | | 21+ | 0.00 |

**CORRIDOR PERCENTAGE TABLE**
**Standard Death Benefit**

| Insured's Policy Age | Percentage | Insured's Policy Age | Percentage |
|---|---|---|---|
| 0-40 | 250% | 60 | 130% |
| 41 | 243% | 61 | 128% |
| 42 | 236% | 62 | 126% |
| 43 | 229% | 63 | 124% |
| 44 | 222% | 64 | 122% |
| 45 | 215% | 65 | 120% |
| 46 | 209% | 66 | 119% |
| 47 | 203% | 67 | 118% |
| 48 | 197% | 68 | 117% |
| 49 | 191% | 69 | 116% |
| 50 | 185% | 70 | 115% |
| 51 | 178% | 71 | 113% |
| 52 | 171% | 72 | 111% |
| 53 | 164% | 73 | 109% |
| 54 | 157% | 74 | 107% |
| 55 | 150% | 75 - 90 | 105% |
| 56 | 146% | 91 | 104% |
| 57 | 142% | 92 | 103% |
| 58 | 138% | 93 | 102% |
| 59 | 134% | 94 | 101% |
| | | 95 + | 100% |

SCHEDULE OF POLICY BENEFITS (CONTINUED)

TABLE OF GUARANTEED COST OF INSURANCE RATES
MAXIMUM MONTHLY COST OF INSURANCE PER $1,000

| | Male | | Female | |
|---|---|---|---|---|
| Attained Age | Pref NS Pref Plus Non Smoker | Pref S Smoker | Pref NS Pref Plus Non Smoker | Pref S Smoker |
| 0 | 0.35 | 0.00 | 0.24 | 0.00 |
| 1 | 0.09 | 0.00 | 0.07 | 0.00 |
| 2 | 0.08 | 0.00 | 0.07 | 0.00 |
| 3 | 0.08 | 0.00 | 0.07 | 0.00 |
| 4 | 0.08 | 0.00 | 0.06 | 0.00 |
| 5 | 0.08 | 0.00 | 0.06 | 0.00 |
| 6 | 0.07 | 0.00 | 0.06 | 0.00 |
| 7 | 0.07 | 0.00 | 0.06 | 0.00 |
| 8 | 0.06 | 0.00 | 0.06 | 0.00 |
| 9 | 0.06 | 0.00 | 0.06 | 0.00 |
| 10 | 0.06 | 0.00 | 0.06 | 0.00 |
| 11 | 0.06 | 0.00 | 0.06 | 0.00 |
| 12 | 0.07 | 0.00 | 0.06 | 0.00 |
| 13 | 0.08 | 0.00 | 0.06 | 0.00 |
| 14 | 0.10 | 0.00 | 0.07 | 0.00 |
| 15 | 0.11 | 0.14 | 0.07 | 0.08 |
| 16 | 0.12 | 0.16 | 0.07 | 0.08 |
| 17 | 0.13 | 0.17 | 0.08 | 0.09 |
| 18 | 0.13 | 0.18 | 0.08 | 0.09 |
| 19 | 0.14 | 0.19 | 0.08 | 0.09 |
| 20 | 0.14 | 0.19 | 0.08 | 0.10 |
| 21 | 0.14 | 0.19 | 0.09 | 0.10 |
| 22 | 0.14 | 0.19 | 0.09 | 0.10 |
| 23 | 0.13 | 0.19 | 0.09 | 0.10 |
| 24 | 0.13 | 0.18 | 0.09 | 0.11 |
| 25 | 0.13 | 0.18 | 0.09 | 0.11 |
| 26 | 0.12 | 0.17 | 0.09 | 0.11 |
| 27 | 0.12 | 0.17 | 0.10 | 0.12 |
| 28 | 0.12 | 0.17 | 0.10 | 0.12 |
| 29 | 0.12 | 0.17 | 0.10 | 0.12 |
| 30 | 0.12 | 0.18 | 0.10 | 0.13 |
| 31 | 0.12 | 0.18 | 0.11 | 0.13 |
| 32 | 0.13 | 0.19 | 0.11 | 0.14 |
| 33 | 0.13 | 0.20 | 0.11 | 0.15 |
| 34 | 0.13 | 0.21 | 0.12 | 0.16 |
| 35 | 0.14 | 0.22 | 0.12 | 0.16 |
| 36 | 0.15 | 0.23 | 0.13 | 0.17 |
| 37 | 0.16 | 0.25 | 0.14 | 0.19 |
| 38 | 0.17 | 0.28 | 0.15 | 0.21 |
| 39 | 0.18 | 0.30 | 0.16 | 0.23 |
| 40 | 0.19 | 0.33 | 0.17 | 0.25 |
| 41 | 0.21 | 0.36 | 0.19 | 0.28 |
| 42 | 0.22 | 0.40 | 0.20 | 0.30 |
| 43 | 0.24 | 0.44 | 0.22 | 0.33 |
| 44 | 0.26 | 0.48 | 0.23 | 0.36 |
| 45 | 0.28 | 0.52 | 0.25 | 0.38 |
| 46 | 0.30 | 0.57 | 0.27 | 0.41 |
| 47 | 0.32 | 0.62 | 0.28 | 0.44 |
| 48 | 0.35 | 0.68 | 0.30 | 0.47 |
| 49 | 0.38 | 0.74 | 0.33 | 0.51 |

SCHEDULE OF POLICY BENEFITS (CONTINUED)

TABLE OF GUARANTEED COST OF INSURANCE RATES
MAXIMUM MONTHLY COST OF INSURANCE PER $1,000

| | Male | | Female | |
|---|---|---|---|---|
| Attained Age | Pref NS Pref Plus Non Smoker | Pref S Smoker | Pref NS Pref Plus Non Smoker | Pref S Smoker |
| 50 | 0.41 | 0.80 | 0.35 | 0.55 |
| 51 | 0.45 | 0.87 | 0.38 | 0.59 |
| 52 | 0.49 | 0.96 | 0.41 | 0.63 |
| 53 | 0.54 | 1.05 | 0.44 | 0.68 |
| 54 | 0.59 | 1.16 | 0.47 | 0.73 |
| 55 | 0.65 | 1.27 | 0.51 | 0.79 |
| 56 | 0.72 | 1.39 | 0.55 | 0.84 |
| 57 | 0.79 | 1.52 | 0.59 | 0.89 |
| 58 | 0.87 | 1.66 | 0.63 | 0.94 |
| 59 | 0.96 | 1.80 | 0.67 | 0.99 |
| 60 | 1.06 | 1.95 | 0.71 | 1.05 |
| 61 | 1.17 | 2.13 | 0.77 | 1.12 |
| 62 | 1.29 | 2.33 | 0.84 | 1.21 |
| 63 | 1.44 | 2.55 | 0.92 | 1.32 |
| 64 | 1.60 | 2.80 | 1.02 | 1.46 |
| 65 | 1.78 | 3.08 | 1.14 | 1.60 |
| 66 | 1.97 | 3.36 | 1.26 | 1.75 |
| 67 | 2.18 | 3.66 | 1.38 | 1.90 |
| 68 | 2.41 | 3.96 | 1.50 | 2.04 |
| 69 | 2.65 | 4.29 | 1.63 | 2.19 |
| 70 | 2.93 | 4.66 | 1.78 | 2.36 |
| 71 | 3.30 | 5.06 | 1.97 | 2.57 |
| 72 | 3.62 | 5.53 | 2.19 | 2.84 |
| 73 | 4.04 | 6.05 | 2.47 | 3.17 |
| 74 | 4.52 | 6.62 | 2.79 | 3.55 |
| 75 | 5.04 | 7.26 | 3.16 | 3.97 |
| 76 | 5.59 | 7.93 | 3.57 | 4.43 |
| 77 | 6.18 | 8.61 | 4.01 | 4.92 |
| 78 | 6.79 | 9.29 | 4.49 | 5.43 |
| 79 | 7.44 | 9.99 | 5.01 | 5.98 |
| 80 | 8.16 | 10.75 | 5.60 | 6.59 |
| 81 | 8.97 | 11.58 | 6.28 | 7.28 |
| 82 | 9.90 | 12.51 | 7.07 | 8.09 |
| 83 | 10.95 | 13.55 | 7.99 | 9.01 |
| 84 | 12.12 | 14.67 | 9.02 | 10.10 |
| 85 | 13.37 | 15.82 | 10.16 | 11.20 |
| 86 | 14.70 | 16.98 | 11.40 | 12.47 |
| 87 | 16.08 | 18.12 | 12.75 | 13.71 |
| 88 | 17.50 | 19.39 | 14.19 | 15.13 |
| 89 | 18.97 | 20.65 | 15.76 | 16.51 |
| 90 | 20.51 | 21.94 | 17.45 | 18.12 |
| 91 | 22.17 | 23.27 | 19.31 | 19.87 |
| 92 | 23.99 | 24.71 | 21.40 | 21.81 |
| 93 | 26.07 | 26.59 | 23.84 | 24.07 |
| 94 | 28.78 | 29.07 | 26.93 | 26.93 |
| 95 | 32.82 | 32.82 | 31.31 | 31.31 |
| 96 | 39.64 | 39.64 | 38.50 | 38.50 |
| 97 | 53.07 | 53.07 | 52.28 | 52.28 |
| 98 | 83.33 | 83.33 | 83.33 | 83.33 |
| 99 | 83.33 | 83.33 | 83.33 | 83.33 |
| 100+ | 0.00 | 0.00 | 0.00 | 0.00 |

**SCHEDULE OF POLICY BENEFITS (CONTINUED)**

**ADDITIONAL BENEFITS PROVIDED BY ENDORSEMENT OR RIDER**

| DESCRIPTION OF ADDITIONAL POLICY BENEFITS | YEARS PAYABLE/ EXPIRY DATE | BENEFIT UNITS OR AMOUNT | ANNUAL PREMIUM |
|---|---|---|---|
| INNOVATION PREMIUM GUARANTEE 2.1 | 06/02/2059 | | $ 330.00 |

## SECTION 1: DEFINITIONS

The following are key words used in this Policy. They are important in describing both Your rights and Ours. When they are used, they are capitalized. As You read Your Policy, refer back to these definitions.

**Assign –** means to transfer Your rights as the Owner of this Policy to another person. If You transfer all of Your rights irrevocably, the Assignment is absolute. If You transfer all or some of Your rights as the Owner of this Policy as security for a loan, but on the condition that they return to You once the debt is paid, then the Assignment is collateral. Details are in Section 3.23.

**Beneficiary –** is the recipient of the Policy Proceeds at the Insured's death. Details are in Section 3.24.

**Cash Surrender Value –** is the Policy Fund less any Surrender Charge.

**Contingent Beneficiary –** if any, will become the Beneficiary if the named Beneficiary dies before the Insured. In the event of Joint Beneficiaries, the Contingent Beneficiary will become the Beneficiary if both Joint Beneficiaries die before the Insured.

**Contingent Owner –** if any, will become the Owner if the named Owner dies before the Insured. In the event of Joint Owners, the Contingent Owner will become the Owner if both named Joint Owners die before the Insured.

**Endorsement or Rider –** is a form which amends this Policy or which provides additional benefits. When an Endorsement or Rider is attached to this Policy it is a part of this Policy and is subject to all the terms of this Policy unless We state otherwise in the Endorsement or Rider.

**Executive Office –** is Our office at One Midland Plaza, Sioux Falls, SD 57193.

**Insured –** is the person whose life is covered under this Policy.

**Insured's Policy Age on Policy Date –** is the Insured's age on his birthday nearest to the Policy Date.

**Maturity Date –** is the date coverage under this Policy terminates and the Policy's Net Cash Surrender Value, if any, becomes payable to You in lieu of the Policy Proceeds, provided this Policy is then in force and the Insured is alive. The Maturity Date is shown in the Schedule of Policy Benefits. This date may be extended. See Section 9 for details.

**Monthly Anniversary –** is the day of the month which has the same date as the Policy Date.

**Net Cash Surrender Value –** is the Cash Surrender Value less any Policy Debt.

**Net Premium –** is the portion of each premium paid that We will add to the Policy Fund. It is equal to the premium paid, minus the Premium Load.

**Owner –** is the person who may exercise the rights listed in Section 3.21.

**Policy Age –** is the Insured's age on his birthday nearest to the Policy Anniversary.

**Policy Anniversary –** is the same day and month as the Policy Date for each year this Policy is in force.

**Policy Date** (or Contract Date when used in any attached Endorsement or Rider) – is the date on which this Policy is issued and the insurance coverage becomes effective.

**Policy Months and Policy Years –** refer to the months and years during which this Policy is in force. Policy Months and Policy Years are measured from the Policy Date.

**Supplemental Benefit –** is a benefit provided by an Endorsement or Rider and is in addition to the other benefits of this Policy.

**Written Notice –** means a written form satisfactory to Us and received by Us at Our Executive Office.

## SECTION 2: POLICY PROCEEDS

**2.1 PAYMENT OF PROCEEDS** – Proceeds, as used in this Policy means the amount payable on the earliest of: (1) the Maturity Date; (2) the surrender date of the policy; or (3) the death of the Insured. The proceeds payable on the date of death of any other person insured by Endorsement or Rider will be as provided in the Endorsement or Rider.

**2.11 PROCEEDS PAYABLE** – If the Insured dies while this Policy is in force, upon receipt of proof of the Insured's death and supporting evidence acceptable to Us, We will pay the Proceeds to the Beneficiary within the period required by the state or jurisdiction in which this policy is delivered. Such period begins when we receive proof of the Insured's death and supporting evidence acceptable to Us at Our Executive Office. Proceeds payable at the Insured's death are equal to:

1. The amount of the Death Benefit; plus
2. Any Supplemental Benefit providing proceeds which are payable on the Insured's death; less
3. Any Policy Debt; and less
4. Any Additional Required Premium.

Proceeds will be paid in one lump sum, within 45 days of receipt of due proof of death, unless the Beneficiary requests otherwise and such request is agreed to by Us. We will pay interest from the date of the Insured's death until the date when proceeds are paid in a single sum. Interest will be paid at an annual interest rate determined by Us, but will be the greater amount of: (1) the current interest rate being paid on proceeds left on deposit with Us; or (2) the rate required by the state in which this policy is delivered.

The Policy Proceeds will be exempt from the claims of creditors and from legal process, to the extent the law permits.

If this Policy is surrendered, or if this policy reaches the Maturity Date, the Proceeds payable to You will be the Net Cash Surrender Value on such date.

**2.2 DEATH BENEFIT** – Under Death Benefit Option 1, the Death Benefit is the greater of:

1. The Specified Amount; or
2. The Policy Fund multiplied by the Corridor Percentage.

Under Death Benefit Option 2, the Death Benefit is the greater of:

1. The Specified Amount plus the Policy Fund; or
2. The Policy Fund multiplied by the Corridor Percentage.

**2.3 CORRIDOR PERCENTAGE** – The Corridor Percentage Table is shown in the Schedule of Policy Benefits. The Corridor Percentage is found in this table and changes on each Policy Anniversary. The Corridor Percentage depends upon the Policy Age of the Insured on the Policy Anniversary. This coverage is intended to qualify as life insurance under the Internal Revenue Code of 1986, as amended. The Corridor Percentages are subject to change if required to continue to qualify as life insurance.

## SECTION 3: GENERAL PROVISIONS

**3.1 CONTRACT**

**3.11 ENTIRE CONTRACT** – The entire contract between You and Us consists of this Policy, including any Supplemental Benefit, schedules, the attached written application for this Policy, and any attached supplemental written application(s). Each statement made in any such written application is deemed a representation and not a warranty. We will not use any statement made by the Insured, or on his behalf, to challenge a claim under this Policy unless it is contained in a written application and attached to this Policy.

Any Supplemental Benefit attached to this Policy is a part of this Policy and is subject to its terms unless We state otherwise in the Supplemental Benefit.

**3.12 CHANGES TO POLICY** – No one has the right to change any part of this Policy or to waive any of its provisions unless the change is approved in writing on this Policy by Our President, one of our Vice Presidents or Secretary.

**3.13 INCONTESTABILITY** – Except for provisions granting disability benefits or accidental death benefits, We cannot contest this Policy or any Supplemental Benefit, except for non-payment of premiums, after it has been in force during the Insured's lifetime for 2 years from the Policy Date or, if reinstated, for 2 years from the date of reinstatement.

An increase in coverage effective after the Policy Date, shall be incontestable only after such increase has been in force during the Insured's lifetime for 2 years from its effective date.

Increases and reinstatements may be contested only with respect to material misstatements made in the application for the increase or reinstatement.

**3.14 SUICIDE** – If the Insured commits suicide, while sane or insane, within 2 years (1 year if issued in Colorado or North Dakota) from the Policy Date, Our liability is limited to an amount equal to the total premiums paid, less any Policy Debt and partial withdrawals. We will pay this amount to the Beneficiary in one lump sum.

If the Insured commits suicide, while sane or insane, within 2 years (1 year if issued in Colorado or North Dakota) from the effective date of any increase in Specified Amount, Our liability with respect to such increase is limited to the Cost of Insurance made for such increase.

**3.15 MISSTATEMENT OF AGE OR SEX** – If the age or sex of the Insured has been misstated, We will adjust the Death Benefit to the amount which the most recent Cost of Insurance would have purchased at the correct age and sex. For any benefits payable under a Rider, We will adjust the Rider benefits to the amount that the most recent Rider Charge would have purchased at the correct age and sex.

**3.16 NON-PARTICIPATING** – This Policy does not share in Our profits or surplus.

**3.2 OWNERSHIP AND BENEFICIARY**

**3.21 OWNER'S RIGHTS** – Without any Beneficiary's consent, You may:

1. Transfer ownership of Your Policy by absolute Assignment;
2. Designate, change or revoke a Contingent Owner; or
3. Change any revocable Beneficiary during the Insured's lifetime.

With each irrevocable Beneficiary's consent, You may:

1. Change the irrevocable Beneficiary during the Insured's lifetime;
2. Receive any benefit, exercise any right, and use any privilege granted by Your Policy allowed by Us; or
3. Agree with Us to any change or amendment of Your Policy.

If You die while the Insured is alive, the Contingent Owner, if any, will become the Owner. If there is no Contingent Owner, ownership will pass to Your estate.

3.22 **CHANGE OF OWNER OR CONTINGENT OWNER** – On the Policy Date the Owner and any Contingent Owner are as designated in the application. You may change the Owner by absolute Assignment as stated in Section 3.23. You may designate, change, or revoke a Contingent Owner while the Insured is alive. We must receive Written Notice informing Us of the designation, change, or revocation. Upon receipt, a designation, change, or revocation takes effect as of the date the Written Notice was signed. However, We are not liable for any actions taken by Us, including payments made, before We record the Written Notice.

3.23 **ASSIGNMENT** – You may Assign this Policy. We are bound by an Assignment only if We receive the original Assignment, or a certified copy, at Our Executive Office and it is recorded by Us. We are not liable for any payment made by Us before We record the Assignment. We take no responsibility for the validity of any Assignment.

You may revoke any Assignment prior to its effective date provided We receive Written Notice of revocation before the Assignment is recorded by Us.

An Assignment will not change or revoke the Beneficiary designation in effect at the time the Assignment is made. If an Assignment is absolute, Your rights and privileges, including any right to change the Beneficiary, vest in the Assignee. If any Assignment is collateral, the collateral Assignee has priority over the interest of any revocable Beneficiary or revocable Payee under any optional method of Policy Settlement.

3.24 **BENEFICIARY** – On the Policy Date, the Beneficiary is as stated in the application. If no Beneficiary is designated in the application, You are the Beneficiary. A Beneficiary is revocable unless otherwise stated in the Beneficiary Designation. If no primary Beneficiary is living at the time of the Insured's death, the proceeds are payable to the Contingent Beneficiary, if any. If no Beneficiary is living at the time of the Insured's death, such interest vests in You.

3.25 **CHANGE OF BENEFICIARY** – You may change a revocable Beneficiary. We must receive Written Notice informing Us of the change. Upon receipt, a change takes effect as of the date the Written Notice was signed. However, We are not liable for any payment made by Us before We record the Written Notice.

3.26 **BENEFICIARY DEATH IN COMMON DISASTER** – If any Beneficiary dies with the Insured in a common disaster, benefits will be paid as if the Beneficiary predeceased the Insured unless it is proved otherwise to Our satisfaction.

3.27 **RIGHT TO REQUEST THIS POLICY** – If You request a change that would cause the information on the Schedule of Policy Benefits, the application or any supplemental application to be incorrect, We reserve the right to require that this Policy be returned to Us so that the appropriate changes can be made.

3.28 **TERMINATION OF POLICY**– All benefits provided by this policy will cease if:

1. You request that this Policy be terminated; or
2. The Insured dies. (If Riders are attached to this policy, Rider forms may provide for continuation of Rider benefits.); or
3. This Policy matures; or
4. The Policy reaches the end of the Grace Period without payment of the Additional Required Premium; or
5. You withdraw all of the Cash Surrender Value.

## SECTION 4: PREMIUMS

4.1 **PAYMENT OF PREMIUMS** – The first premium is due on the Policy Date. A premium may be any amount over $50 subject to the Maximum Premium Limits.

You may pay premiums at any time. We will send premium notices to You annually, semi-annually, or quarterly. You may also pay premiums using a monthly automatic payment plan. You may ask Us to change the amount or frequency of the premiums as long as the amount does not violate the Maximum Premium Limits. Premiums must be paid to Us at Our Executive Office. A premium receipt signed by one of Our officers will be furnished upon request.

Any premium received when there is a Policy Loan will be used to repay the loan. If You wish to apply any payments to premiums rather than repaying the Policy Loan, you must give Written Notice.

We reserve the right to refuse additional premiums when the Death Benefit is equal to the Policy Fund times the corridor percentage.

4.2 **MAXIMUM PREMIUM LIMITS** – Federal law limits the premiums that can be paid if this Policy is to qualify as life insurance for tax purposes. We will not accept a premium which would cause this limit to be violated. If We accept a premium in error, We will refund it as soon as the error is discovered.

If a Policy Change is executed which causes this Policy to exceed the maximum premium limits allowed by Federal law, We will refund the excess premium when the total premiums paid exceed the maximum allowed by Federal Law.

We will accept any premium needed to keep this Policy in force.

4.3 **NO LAPSE GUARANTEE PERIOD** – The No Lapse Guarantee Period ends on the date shown in the Schedule of Policy Benefits. Regardless of the amount of Net Cash Surrender Value, this Policy is guaranteed to remain in force during the No Lapse Guarantee Period if the sum of the premiums paid, less any Policy Debt and any withdrawals, is equal to or greater than the No Lapse Guarantee Premium Requirement on each Monthly Anniversary.

During the No Lapse Guarantee Period, the Policy Fund may have a negative balance. Monthly Deductions will continue to be made, and be added to the negative balance. At the end of the No Lapse Guarantee Period, we will notify you of the amount of any negative balance and you will have 61 days to pay the negative balance plus the current Monthly Deduction. If the negative balance remains unpaid at the end of the 61 days, this Policy will terminate without value.

4.4 **NO LAPSE GUARANTEE PREMIUM REQUIREMENT** – The No Lapse Guarantee Premium Requirement is:

1. The No Lapse Guarantee Premium shown in the Schedule of Policy Benefits, times
2. The number of Policy Months completed plus one.

4.5 **CONTINUATION OF INSURANCE** – Even if You stop paying premiums, this Policy will continue as long as:

1. The Net Cash Surrender Value is sufficient to make Monthly Deductions, or
2. The Policy is within the No Lapse Guarantee Period and the sum of the premiums paid, less any Policy Debt and any withdrawals, has always been equal to or greater than the No Lapse Guarantee Premium Requirement.

4.6 **GRACE PERIOD** – Before this Policy will terminate for insufficient payment of premium, a Grace Period of 61 days will be given for the payment of additional premiums. The Grace Period will begin on any Monthly Anniversary where this Policy does not meet the conditions in the Continuation of Insurance provision. If the Grace Period expires without payment of the Additional Required Premium, this Policy will terminate at the end of the Grace Period without value.

4.7 **ADDITIONAL REQUIRED PREMIUM** – If this Policy is within the No Lapse Guarantee Period, and the sum of premiums paid, less any Policy Debt and withdrawals has always been greater than the No Lapse Guarantee Premium Requirement, the Additional Required Premium to keep this Policy in force will be the lesser of:

1. The No Lapse Guarantee Premium Requirement at the beginning of the Grace Period, plus any Policy Debt and any withdrawals, less the sum of premiums paid; and
2. The premium needed to increase the Net Cash Surrender Value to an amount that allows the Monthly Deduction to be made.

If the Policy is beyond the No Lapse Guarantee Period, the Additional Required Premium will be the premium needed to increase the Net Cash Surrender Value to an amount that allows the Monthly Deduction to be made.

**4.8 REINSTATEMENT** – This Policy may be reinstated following the end of the Grace Period. Such Reinstatement must be made while the Insured is living and within 5 years of the expiration of the Grace Period. For such reinstatement, We will require:

1. Written application for reinstatement;
2. Evidence of insurability satisfactory to Us;
3. Payment of a premium that is enough to keep the Policy in force for 2 months following reinstatement;
4. Payment or restoration of any Policy Debt; and
5. Deduction from the Policy Fund of all overdue Monthly Deductions.

If this Policy is reinstated during the No Lapse Guarantee Period, We will reinstate the No Lapse Guarantee Period, but in no event will it extend beyond the initial No Lapse Guarantee Period. To reinstate the No Lapse Guarantee Period, the total premium paid less any Policy Debt or withdrawals must exceed the No Lapse Guarantee Premium Requirement.

If this Policy is reinstated after the No Lapse Guarantee Period, the No Lapse Guarantee Period will not apply.

Reinstatement is effective on the first Monthly Anniversary on or following Our approval of the reinstatement. The Surrender Charge is not affected by Reinstatement.

## SECTION 5: RIGHT TO CHANGE THE DEATH BENEFIT

**5.1 CHANGES IN SPECIFIED AMOUNT** – You may change the Specified Amount while the Insured is living. You must send Us a written request for the change. You may not make changes more often than twice a year. If We approve the change, We will send You an Endorsement to the Schedule of Policy Benefits. The Endorsement will show the change and the effective date of the change. Any change in Specified Amount is subject to the following conditions:

1. If the Specified Amount is to be decreased:
   a. The Specified Amount can not be decreased to less than the Minimum Specified Amount shown in the Schedule of Policy Benefits;
   b. The Specified Amount can not be decreased to an amount that would cause the Maximum Premium Limits to be violated;
   c. All decreases in Specified Amount will decrease previous increases in reverse order before decreasing the initial Specified Amount; and
   d. The No Lapse Guarantee Premium shown in the Specified Amount will not decrease.
2. If the Specified Amount is to be increased:
   a. The Specified Amount can not be increased by less than the Minimum Increase Amount shown in the Schedule of Policy Benefits;
   b. The increase must be applied for on a supplemental application;
   c. We will need satisfactory evidence of the Insured's insurability;
   d. The portion of the Specified Amount representing the increase may be assigned a Premium Class different from the Premium Class assigned to the initial Specified Amount or to any other increase; and
   e. The No Lapse Guarantee Premium shown in the Schedule of Policy Benefits will increase.

**5.2 CHANGES IN DEATH BENEFIT OPTION** – You may change the Death Benefit Option. You must send Us a written request for the change. The change will be effective on the date shown in the amended Schedule of Policy Benefits. We will require satisfactory evidence of the Insured's insurability to make this change. We will not allow a change if it would cause the Maximum Premium Limits to be violated.

1. If the change is from Option 1 to Option 2, the Specified Amount will be reduced to equal the current Specified Amount minus the current Policy Fund. This change will not be allowed if it would result in the Specified Amount being less than the Minimum Specified Amount shown in the Schedule of Policy Benefits.

2. If the change is from Option 2 to Option 1, the Specified Amount will be increased to equal the current Specified Amount plus the current Policy Fund.

## SECTION 6: POLICY VALUES

**6.1 POLICY FUND** – The Policy Fund is equal to the accumulation at interest of:

1. The Policy Fund from the end of the previous Policy Month; plus
2. Any Premiums received during the current Policy Month, less the Premium Load; minus
3. The Monthly Deduction made at the beginning of the current Policy Month; minus
4. Any partial withdrawals of cash value made during the current Policy Month.

The Policy Fund on the Policy Date is any premium received on or before the Policy Date, less the Premium Load, minus the Monthly Deduction due on the Policy Date.

**6.2 CASH SURRENDER VALUE** – The Cash Surrender Value is equal to the Policy Fund less a Surrender Charge. Cash Surrender Values are at least equal to those required on the Policy Date by the state in which this policy was delivered. Where required, a detailed statement of the cash values and reserves under this Policy has been filed with the insurance department of the state in which this Policy was delivered. The Minimum Cash Surrender Value is based on the 1980 Commissioners' Standard Ordinary, Sex Distinct, Smoker and Nonsmoker, Age Nearest Birthday Mortality Table, appropriately modified for rated premium classes, and Minimum Guaranteed Interest Rate shown in the Schedule of Policy Benefits.

**6.3 INTEREST RATE** - The Minimum Guaranteed Interest Rate shown in the Schedule of Policy Benefits is the minimum annual interest rate We will apply to the Policy Fund for the life of the contract. We may credit a current interest rate that is greater than the Guaranteed Interest Rate. Any current interest rate will be stated as the effective annual rate of interest. We may credit a different current rate for the portion of the Policy Fund that is a Policy Debt, if any.

**6.4 MONTHLY DEDUCTION** – The Monthly Deduction for a Policy Month is equal to:

1. The Expense Amount; plus
2. The Cost of Insurance for that Policy Month; plus
3. The Rider Charge for that Policy Month. The Rider Charge is the cost of additional benefits provided by any Riders.

**6.4.1 EXPENSE AMOUNT** - The Expense Amount will never be more than:

1. The Policy Expense Charge shown on the Schedule of Policy Benefits, plus
2. The Unit Expense Charge shown in the Schedule of Policy Benefits times the highest Specified Amount ever in effect divided by 1000.

**6.5 COST OF INSURANCE** – The Cost of Insurance is determined on each Monthly Anniversary. It is equal to (1) multiplied by the difference between (2) and (3), divided by $1,000 where:

1. is the Cost of Insurance Rate;
2. is the Insured's Death Benefit divided by 1.0028709; and
3. is the Policy Fund after deducting the Expense Amount and the Rider Charge.

**6.6 PREMIUM LOAD** – A Premium Load will be charged each time a premium is paid. The maximum Premium Load is found in the Schedule of Policy Benefits.

**6.7 COST OF INSURANCE RATES** – The monthly Cost of Insurance Rates in a Premium Class other than Rated will never be more than those shown in the Table of Guaranteed Monthly Cost of Insurance Rates in the Schedule of Policy Benefits. We may declare Cost of Insurance Rates that differ from those shown in the Schedule of Policy Benefits. Cost of Insurance Rates are based on the Insured's Policy Age on Policy Date, Policy Anniversary, Sex, Specified Amount, and Premium Class of the Insured.

**6.8 DECLARED RATES AND CHARGES** – We may declare Cost of Insurance Rates, Expense Amounts, Premium Loads, and Interest Rates that differ from those stated in the Policy. Changes in the Cost of Insurance Rates, Expense Amounts, Premium Loads, and Interest Rates will be based upon changes in future expectations for such elements as investment earnings, mortality, persistency, and expenses. Changes in the declared Cost of Insurance Rates, and Policy Charges, will be by the Insured's Policy Age on Policy Date, Policy Anniversary, Sex, Specified Amount, and Premium Class of the Insured.

**6.9 SURRENDER CHARGE** – The Surrender Charge varies by Policy Year. It is based on the sex of the Insured, Insured's Policy Age on Policy Date shown on the Schedule of Policy Benefits, and Premium Class. The Surrender Charge for the initial Specified Amount is equal to:

1. The Surrender Charge Factor found in the Table of Surrender Charges on the Schedule of Policy Benefits; multiplied by
2. The number of thousands of initial Specified Amount.

A Specified Amount decrease will not reduce the Surrender Charge. If the Specified Amount increases, the Surrender Charge will increase. The Surrender Charge for the Specified Amount increase will equal the Surrender Charge for a new Policy with:
1. The initial Specified Amount equal to the increase in Specified Amount;
2. The Insured's Policy Age on the Policy Date equal to the Policy Age on the date of the Specified Amount increase; and
3. The Premium Class for the Specified Amount increase.

**6.10 INTEREST BONUS** – If We declare excess interest after the 10th Policy Anniversary, We will declare an excess interest rate which is 1.0 percent greater than any excess interest rate We declare for similar policies which have not reached the end of the 10th Policy Anniversary.

**6.11 WITHDRAWAL OF CASH SURRENDER VALUE** – You may request in writing a Withdrawal of part or all of the Cash Surrender Value on any Monthly Anniversary before the Maturity Date while the Insured is living.

If the total Cash Surrender Value is withdrawn, the amount payable will be the Net Cash Surrender Value on the date of withdrawal.

A partial Withdrawal of up to 50% of the Net Cash Surrender Value will be allowed in any one Policy year. Withdrawals in excess of this amount will not be allowed. The Withdrawal must be at least the Minimum Withdrawal Amount shown in the Schedule of Policy Benefits. The amount payable upon a partial Withdrawal will be:
1. The amount of the Withdrawal requested; minus
2. Any applicable Withdrawal Charge.

When a partial Withdrawal is made, the amount of the Withdrawal will be deducted from the Policy Fund. The Specified Amount will be reduced by the amount of the Withdrawal unless:
1. Death Benefit Option 2 is in effect; or
2. The Policy Fund after Withdrawal times the Percentage found in the Corridor Percentage Table for the next Policy Year exceeds the Specified Amount prior to Withdrawal.

A partial Withdrawal will not be allowed if it could result in the Specified Amount being less than the Minimum Specified Amount shown in the Schedule of Policy Benefits, or if it would cause the Maximum Premium Limits to be violated.

For any Withdrawal, We reserve the right to defer payment for up to 6 months after We receive Your request. We will not defer payment if a partial Withdrawal is to be used to pay premiums on policies with Us. If the Withdrawal is requested within 30 days of a Policy Anniversary, the amount payable on Withdrawal will be the Net Cash Surrender Value plus any charges and deductions made since that Policy Anniversary, less any Policy Loans or partial Withdrawals made on or after that date.

**6.12 WITHDRAWAL CHARGE** – There is no Withdrawal Charge for the first Withdrawal made in a Policy Year. There is a Withdrawal Charge for each subsequent Withdrawal made in that Policy Year. The maximum Withdrawal Charge is shown in the Schedule of Policy Benefits.

## SECTION 7: ANNUAL REPORT OF POLICY STATUS

**ANNUAL REPORT OF POLICY STATUS** – We will send You an annual report, at no charge, which gives a summary of this Policy's status as of the end of each Policy Year. This report will give information regarding the Death Benefit, Cash Surrender Value, premium payments, Monthly Deductions, and interest .

In addition to the annual report, We will prepare at Your request a projection of the results of this Policy for future years. We will not charge more than $25 for this projection.

## SECTION 8: POLICY LOANS

8.1 **LOAN REQUIREMENTS** – After this Policy has a Loan Value, You may borrow all or part of the Loan Value if these conditions are met:

1. The Insured is living;
2. You send Us a written request in a form approved by Us; and
3. You assign this Policy to Us as sole security for a loan.

The minimum requested loan that We will process and issue a check for is $100. However, We will allow smaller loans to pay for loan interest.

We reserve the right to require this policy accompany the Written Request.

8.2 **LOAN VALUE** – The Loan Value is the amount of loan available on any date. The Loan Value equals 94% of the Cash Surrender Value less the Policy Debt.

8.3 **INTEREST ON POLICY LOANS** – We will charge interest on any Policy Loan at the Policy Loan Interest Rate. Interest is due at the end of each Policy Year. If interest is not paid when due, it will be added to the loan and bear interest at the same rate.

8.4 **POLICY LOAN INTEREST RATE** – The Maximum Policy Loan Interest Rate is shown in the Schedule of Policy Benefits. However, a lower rate may be charged. If the interest rate is lowered, it can be increased later. Any increase or decrease will occur no more than once a year. Any increase in the interest rate will be limited to a maximum of 1% a year. You will be given notice of any such increase at least 30 days before the effective date of the increase.

8.5 **ZERO COST LOANS** – Starting in the First Policy Year For Zero Cost Loans shown on the Schedule of Policy Benefits, and each year after that, You may take a Zero Cost Loan. The interest rate we charge on Zero Cost Loans will be the Minimum Guaranteed Interest Rate shown in the Schedule of Policy Benefits.

The maximum Zero Cost Loan amount is the Policy Fund, minus total premium paid.

The maximum dollar amount of a Zero Cost Loan for a given Policy Year is fixed at the time that the first loan is made in that Policy Year. If the full dollar amount of a Zero Cost Loan is not taken at that time, the balance may be taken prior to the end of the Policy Year. However, the maximum dollar amount will be recalculated for future Policy Years.

8.6 **POLICY DEBT** – Policy Debt at any time is the total loan on the Policy on that date plus the accrued interest.

8.7 **LOAN AND REPAYMENT** – We have the right to postpone making a Policy Loan for up to 6 months from the time We receive the request. However, We will not postpone a Policy Loan if it will be used to pay premiums on other policies issued by Us. All or part of any Policy Debt may be paid back at any time while this Policy is in force.

If the Insured dies before a Policy Loan is repaid, the amount of the Policy Debt will be deducted from the Proceeds of this Policy.

8.8 **EXCESS POLICY DEBT** – If the Policy Debt grows to be equal to or greater than the Cash Surrender Value, Your Policy will enter the Grace Period.

MIDLAND NATIONAL
Life Insurance Company
A Member of the Sammons Financial Group
A Stock Company
Principal Office: 4601 Westown Parkway, Suite 300, West Des Moines, IA 50266 ♦ (515) 440-5500
Executive Office: One Midland Plaza, Sioux Falls, SD 57193 ♦ (800) 923-3223

## PREMIUM GUARANTEE RIDER

This Rider is a part of the Policy to which it is attached. It is subject to all the provisions of the Policy unless We state otherwise.

**Effective Date** – The Rider is effective on the Policy Date shown in the Schedule of Policy Benefits. This rider cannot be elected after the Policy Date.

**Consideration** – This Rider is issued in consideration of the application for it and the deduction of the Monthly Rider Charge from the Policy Fund while this rider is in force.

**Benefit** – If, on any Monthly Anniversary after the No Lapse Guarantee Period, the total of all Premium Guarantee Accounts (here in after referred to as PGA I or PGA II or the "Accounts") are greater than the Policy Debt, then the Policy will not enter the Grace Period or lapse due to its Net Cash Surrender Value, even if the Net Cash Surrender Value is insufficient to pay the Monthly Deduction.

**Premium Guarantee Accounts** - The Premium Guarantee Accounts are reference values used to determine whether this rider is in force to provide the Benefit shown above. Each Premium Guarantee Account is calculated as follows:

The Premium Guarantee Account is equal to the accumulation at interest of:

1. That Premium Guarantee Account from the end of the previous Policy Month; plus
2. Any Premiums received in that account during the current Policy Month, less the Account Premium Load; minus
3. The Required Premium deducted from that account at the beginning of the current Policy Month; minus
4. The Account Expense deducted from that account at the beginning of the current Policy Month; minus
5. The Required Rider Amount deducted from that account for that at the beginning of the current Policy Month; minus
6. Any Withdrawals of cash value made during the current Policy Month that were deducted from that account.

PGA I on the Policy Date is equal to any premium received on or before the Policy Date less the Account Premium Load minus the Required Premium Amount, minus the Required Rider Amount, minus the Account Expense due on the Policy Date. PGA II is equal to zero on the Policy Date.

The Premium Guarantee Accounts are used only for the purpose of determining whether this Rider is in force; they do not represent an independent dollar value that can be accessed by You. Further, they do not affect the calculation of the actual Policy Fund, Cash Surrender Value or any other value described in the Policy.

**Account Premium Load** – The Account Premium Load will be deducted from each premium paid in the calculation of the Premium Guarantee Accounts. The Account Premium Load is guaranteed in all years and is shown in the Schedule of Premium Guarantee Rider Amounts.

**Account Interest Rate** - The effective annual Account Interest Rate for the Accounts is guaranteed in all years and is shown in the Schedule of Premium Guarantee Rider Amounts. Interest Rate Table I will be used for PGA I and Interest Rate Table II will be used for PGA II. The Monthly Account Interest rate is the monthly rate that will produce an effective annual yield equal to the Account Interest Rate.

**Required Premium** – The Required Premium is determined on each Monthly Anniversary. It is equal to: (a) multiplied by the difference between (b) and (c), divided by 1,000.

(a) The Account Premium Rate;
(b) The Account Death Benefit divided by one plus the Monthly Account Interest Rate for PGA II; and
(c) The total of all Premium Guarantee Accounts after deducting the Required Rider Amount and any Account Expense.

**Account Death Benefit** – Under Death Benefit Option 1, the Account Death Benefit is the greater of:

1. The Specified Amount in effect for the Policy Month; or
2. The total of the Accounts multiplied by the Corridor Percentage.

Under Death Benefit Option 2, the Account Death Benefit is the greater of:

1. The Specified Amount in effect for the Policy Month, plus the total of the Accounts; or
2. The total of the Accounts multiplied by the Corridor Percentage.

The Account Death Benefit is used only for the purpose of determining the Premium Guarantee Accounts; it does not represent an independent dollar value that will be payable upon death.

**Account Premium Rates** – The Account Premium Rates are based on the Issue Age, Policy Year, Sex, Specified Amount, and Premium Class of the Insured. The monthly Account Premium Rates are guaranteed in all years and are shown on the Schedule of Premium Guarantee Rider Amounts Table A and Table B. Table B will be applied if PGA II is not equal to zero, otherwise Table A will apply.

**Account Expense** – The monthly Account Expense is shown on the Schedule of Premium Guarantee Rider Amounts and is guaranteed in all years.

**Required Rider Amount** - The Required Rider Amount is based on the additional benefits provided by any Riders to the Policy. The Required Rider Amount for this Rider is zero. The Required Rider Amount for any Term Rider is shown in the Schedule of Premium Guarantee Rider Amounts. The Required Rider Amount for all other riders will be the same as the Rider Charge that is deducted from the Policy Fund.

**Allocation Among Accounts** – Premiums, Withdrawals, Required Premiums, Account Expenses and Required Rider Amounts will be allocated among the Accounts by the following rules:

- Premiums:
  (a) If the initial premium, allocate to PGA I.
  (b) If any other premium paid while the total of all Accounts exceeds zero, allocate to PGA I.
  (c) Otherwise, allocate to PGA II.
- Withdrawals:
  (a) Allocate to PGA I until it is reduced to zero.
  (b) Allocate remaining balance to PGA II.
- Required Premiums, Account Expenses and Required Rider Amounts:
  (a) Allocate to PGA II until it is reduced to zero.
  (b) Allocate balance to PGA I until it is reduced to zero.
  (c) Allocate remaining balance to PGA II (in addition to any allocation to PGA II made in (a) above).

**Monthly Rider Charge** – The Monthly Rider Charge is equal to one twelfth of the Annual Premium shown on the Schedule of Policy Benefits. The Monthly Rider Charge will be deducted from the Policy Fund on each Monthly Anniversary.

**Waiver of Charges** – If the Policy contains a Waiver of Charges Rider and a Total Disability claim is approved while this Rider is effective, then for any month for which Monthly Deductions are thereby waived, Required Premium Amounts, the Account Expense and Required Rider Amounts will not be deducted from the Premium Guarantee Account.

**Contestability** – No material misrepresentation made in any application for this Rider will be used to contest payment of any benefit under this Rider after the Rider has been in force during an Insured's lifetime for two years from the Effective Date.

**Reinstatement** – If this Rider terminates and the Policy remains in force, this Rider cannot be reinstated. If the Policy lapses and is reinstated, this Rider can be reinstated with the Policy when all Required Premium Amounts, Account Expenses and Required Rider Amounts are received at our Executive Office with interest.

**Termination** – This Rider will terminate on the earliest of:

1. The Expiry Date shown on the Schedule of Policy Benefits.
2. The Monthly Anniversary on which the total of the Accounts has been less than the Policy Debt for twenty-four consecutive months and the Policy is no longer within the No Lapse Guarantee Period.
3. The Monthly Anniversary following Your Written Request to terminate this Rider.
4. Policy termination or Maturity.

President

Secretary

## SECTION 9: MATURITY DATE

**MATURITY DATE –** The Maturity Date of this Policy is shown in the Schedule of Policy Benefits. If the Insured is living at maturity, You may ask Us to continue this Policy. We will extend the Maturity Date if in so doing this Policy still qualifies as life insurance according to the Internal Revenue Service. **By extending the Maturity Date, this Policy may not qualify as life insurance and may be subject to tax consequences.** A tax advisor should be consulted prior to electing to extend the Maturity Date.

To continue this Policy beyond maturity:

1. The Policy cannot be in the Grace Period; and
2. The Death Benefit must be Option 1.

Once this Policy is extended beyond the original Maturity Date:

1. We will not allow any increases to the Specified Amount;
2. We will not allow any changes in the Death Benefit Option;
3. We will not accept any premium payments;
4. We will continue to credit interest on the Policy Fund; and
5. All Monthly Deductions will be eliminated.

Policy loans in effect on the Maturity Date will continue to accrue interest. If Policy Debt causes the Net Cash Surrender Value to decrease to a negative amount, we will send notice requesting a payment large enough to bring the Policy Fund to zero plus one year's interest on the Policy Debt. Notice of such payment will be mailed to Your last known address no later than 30 days prior to termination. If such payment is not received 30 days after mailing the notice, all coverage under the policy will terminate without value at the end of the 30 days.

---

**FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY**

**ADJUSTABLE DEATH BENEFIT**

**INSURANCE PAYABLE UPON DEATH BEFORE MATURITY DATE**
**PREMIUMS PAYABLE TO INSURED'S AGE 100**

**SEE THE "POLICY PROCEEDS" PROVISION TO DETERMINE**
**THE AMOUNT PAYABLE AT DEATH**

**NON PARTICIPATING - NOT ELIGIBLE FOR DIVIDENDS**

## SCHEDULE OF PREMIUM GUARANTEE RIDER AMOUNTS

The amounts shown in this schedule are used only in the calculation of the Premium Guarantee Accounts and do NOT affect the calculation of the Policy Fund, Cash Value or Proceeds. The Premium Guarantee Accounts are used only for the purpose of determining whether this Rider is in force.

ACCOUNT EXPENSE: $0.00 per month

ACCOUNT PREMIUM LOAD: 20% of premiums received

ACCOUNT INTEREST RATE:

Table I
4.00% per year for Policy Years 1-8
5.50% per year for Policy Years 9+

Table II
4.00% per year for Policy Years 1-10
5.25% per year for Policy Years 11+

### GUARANTEED MONTHLY ACCOUNT PREMIUM RATES FOR CALCULATING PREMIUM GUARANTEE ACCOUNT

| Policy Year | Table A | Table B | Policy Year | Table A | Table B | Policy Year | Table A | Table B |
|---|---|---|---|---|---|---|---|---|
| 1 | .1150 | .1150 | 36 | 2.0925 | 7.5200 | 71 | .0000 | .0000 |
| 2 | .1600 | .1600 | 37 | 2.3000 | 8.2725 | 72 | .0000 | .0000 |
| 3 | .2000 | .2000 | 38 | 2.5275 | 8.2725 | 73 | .0000 | .0000 |
| 4 | .2325 | .2325 | 39 | 2.7700 | 8.2725 | 74 | .0000 | .0000 |
| 5 | .2600 | .2600 | 40 | 3.0200 | 8.2725 | 75 | .0000 | .0000 |
| 6 | .2875 | .2875 | 41 | 3.2775 | 8.2725 | 76 | .0000 | .0000 |
| 7 | .3150 | .3150 | 42 | 3.5375 | 8.2725 | 77 | .0000 | .0000 |
| 8 | .3375 | .3375 | 43 | 3.8025 | 8.2725 | 78 | .0000 | .0000 |
| 9 | .3375 | .3375 | 44 | 4.0775 | 8.2725 | 79 | .0000 | .0000 |
| 10 | .3375 | .3375 | 45 | 4.0775 | 8.2725 | 80 | .0000 | .0000 |
| 11 | .3375 | .3925 | 46 | 4.0775 | 8.2725 | 81 | .0000 | .0000 |
| 12 | .3375 | .4425 | 47 | 4.0775 | 8.2725 | 82 | .0000 | .0000 |
| 13 | .3375 | .4925 | 48 | 4.0775 | 8.2725 | 83 | .0000 | .0000 |
| 14 | .3375 | .5500 | 49 | 4.0775 | 8.2725 | 84 | .0000 | .0000 |
| 15 | .3375 | .6325 | 50 | 4.0775 | 8.2725 | 85 | .0000 | .0000 |
| 16 | .3375 | .7700 | 51 | 4.0775 | 8.2725 | 86 | .0000 | .0000 |
| 17 | .3375 | .9325 | 52 | 4.0775 | 8.2725 | 87 | .0000 | .0000 |
| 18 | .3375 | 1.1100 | 53 | 4.0775 | 8.2725 | 88 | .0000 | .0000 |
| 19 | .3825 | 1.3300 | 54 | .0000 | .0000 | 89 | .0000 | .0000 |
| 20 | .4500 | 1.5800 | 55 | .0000 | .0000 | 90 | .0000 | .0000 |
| 21 | .4950 | 1.7425 | 56 | .0000 | .0000 | 91 | .0000 | .0000 |
| 22 | .5450 | 1.9200 | 57 | .0000 | .0000 | 92 | .0000 | .0000 |
| 23 | .5975 | 2.1100 | 58 | .0000 | .0000 | 93 | .0000 | .0000 |
| 24 | .6575 | 2.3275 | 59 | .0000 | .0000 | 94 | .0000 | .0000 |
| 25 | .7375 | 2.6125 | 60 | .0000 | .0000 | 95 | .0000 | .0000 |
| 26 | .8025 | 2.8575 | 61 | .0000 | .0000 | 96 | .0000 | .0000 |
| 27 | .8925 | 3.1825 | 62 | .0000 | .0000 | 97 | .0000 | .0000 |
| 28 | .9950 | 3.5475 | 63 | .0000 | .0000 | 98 | .0000 | .0000 |
| 29 | 1.1025 | 3.9400 | 64 | .0000 | .0000 | 99 | .0000 | .0000 |
| 30 | 1.2175 | 4.3575 | 65 | .0000 | .0000 | 100 | .0000 | .0000 |
| 31 | 1.3400 | 4.7950 | 66 | .0000 | .0000 | | | |
| 32 | 1.4650 | 5.2500 | 67 | .0000 | .0000 | | | |
| 33 | 1.6000 | 5.7350 | 68 | .0000 | .0000 | | | |
| 34 | 1.7450 | 6.2650 | 69 | .0000 | .0000 | | | |
| 35 | 1.9100 | 6.8550 | 70 | .0000 | .0000 | | | |

# EXHIBIT B

Scan 06/13/2006 13:57:43

Scan 04/19/06 17:36:33

Received 4/18/06 7:19:52 PM [Central Daylight Time] in 06-18 on line [5] for 38673 * Pg 2/14 543

TO:Sammons Financial Gr P.2/14

64 Addt

**MIDLAND NATIONAL® Life Insurance Company**

A Member of the Sammons Financial Group

2201441-9

"9300R"

GENERAL PURPOSE LIFE APPLICATION (Please Print and Use Black Ink)

1\. PRIMARY PROPOSED INSURED ☐ SINGLE ☒ MARRIED

| Last Name | First | M.I. | Birthdate (Mo. / Day / Year) | State of Birth | Age | Sex | Height (ft-in) | Weight (lbs) |
|---|---|---|---|---|---|---|---|---|
| JONES | GREGG | D | [redacted] 56 | CA | 49 | M | 5'11" | 180 |

1a. Are you a U.S. Citizen, or do you have a permanent Visa? ☒ Yes ☐ No (If no, complete Foreign Travel and Residence Questionnaire)

Social Security Number: [redacted] Driver's License Number: [redacted] State: WY

Occupation: BANKER Employer (Company Name and Address): JONA, INC CHEYENNE, WY Annual Income: 150,000.00 Net Worth: [redacted]

2\. ADDITIONAL INSURED/SPOUSE PROPOSED for INSURANCE (or premium payer for juvenile policy)

| Last Name | First | M.I. | Birthdate (Mo. / Day / Year) | State of Birth | Age | Sex | Height (ft-in) | Weight (lbs) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

2a. Are you a U.S. Citizen, or do you have a permanent Visa? ☐ Yes ☐ No (If no, complete Foreign Travel and Residence Questionnaire)

Social Security Number: Driver's License Number: State

Occupation: Employer (Company Name and Address) Annual Income

| DEPENDENT CHILDREN PROPOSED for INSURANCE | Birthdate Mo. | Day | Year | State of Birth | Age | Sex | Social Security Number | Height (ft-in) | Weight (lbs) |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

3\. RESIDENCE ADDRESS (Street, City, State, Zip): [redacted] CHEYENNE WY 82001

3a. How long at this address? 10 Years Months

If less than 2 years, provide previous address.

3b. MAILING ADDRESS (If other than residence)

4\. CONTACT THE PROPOSED INSURED AT: ☒ RESIDENCE ☐ BUSINESS 7:00 Time (CST) ☐ A.M. ☒ P.M.

RESIDENCE TELEPHONE NUMBER: Primary Insured [redacted] Spouse ( ) Cell Phone [redacted]

BUSINESS TELEPHONE NUMBER: Primary Insured ( ) Spouse ( ) Cell Phone ( )

| | Primary Insured | Additional Insured/ Spouse |
|---|---|---|
| 5a. Has anyone proposed for insurance smoked cigarettes, cigars, pipes, or used tobacco or nicotine in any form, including smokeless tobacco, nicotine patch, gum or other substitutes within the past 36 months? | ☐Yes ☒No | ☐Yes ☐No |
| 5b. If the answer to question 5a is "yes", has anyone proposed for insurance smoked cigarettes, cigars, pipes, or used tobacco or nicotine in any form, including smokeless tobacco, nicotine patch, gum or other substitutes within the last 12 months? | ☐Yes ☐No | ☐Yes ☐No |
| 5c. If the answer to question 5b is "yes", has anyone proposed for insurance used cigarettes within the last 12 months? | ☐Yes ☐No | ☐Yes ☐No |
| 5d. If 5c is "yes", please indicate number of cigarettes smoked per day | | |

6\. AMOUNT $ 132,000.00 PLAN OF PRIMARY POLICY: INNOVATOR UL LIFE 2.1 Agent Use Only A☐ B☐ C☐ Type of Underwriting ☐Traditional ☐X-Press

MIDLAND NATIONAL LIFE INSURANCE COMPANY • EXECUTIVE OFFICE • ONE MIDLAND PLAZA • SIOUX FALLS, SD 57193-0001 • PRINCIPAL OFFICE • DES MOINES, IA 50266

Phone: (605) 335-5700 • New Business Fax • Red Team: (605) 373-8571 Blue Team: (605) 335-7583 Green Team (605) 373-8673 • Fax Center: (605) 335-3621 • Internet: www.MNL.com

Scan 06/13/2006 13:57:44
Scan 06/12/06 18:29:24
Scan 04/19/06 17:56:39

Received 4/18/06 7:18:52 PM [Central Daylight Time] in 06-18 on line [5] for 38573 * Pg 3/14 5-13 TO: Sammons Financial Gr P.3/14

7. For UL/VUL: (check if applicable) [X] Option I [ ] Option II [ ] Rebalance [ ] Minimum Premium [ ] Target Premium | [X] Automatic Premium Loan | Enhanced Corridor Percentage SVUL [ ] Yes [ ] No

8. RIDERS
[ ] Waiver of Premium [ ] Accidental Death Benefit $______ [ ] Pro Term Rider [ ] NLG-Option Period to Age______
[ ] Living Needs Rider [ ] Children's Insurance Rider______ Units [ ] Other Rider (Type) ______ (Amount)
[X] IPGR [ ] Guaranteed Death Benefit to Maturity Rider [ ] Estate Preservation Rider
Individual Life Rider First [ ] Amount $______ Second [ ] Amount $______

9. PREMIUM FREQUENCY: [ ] Annual [ ] Semi-Annual [ ] Quarterly [ ] Monthly
PREMIUM MODE: [ ] EFT [ ] List Billing [ ] Direct Billing (A, SA, Q) only [ ] Civil Service Allotment [ ] Military Government Allotment
List Bill Code ______
Make all checks payable to MIDLAND NATIONAL LIFE INSURANCE COMPANY
Amount of Modal Premium $ —0— Amount Paid with Application $ —0— (Receipt valid only if amount paid with application is entered here.)

| 10. FOR EFT ONLY: DRAW DAY (1ST-20TH) Month Day; 10a. Initial Draft [ ] Yes [ ] No | ACCOUNT TYPE [ ] Checking (enclose voided check) [ ] Savings (must complete 10b) | AUTHORIZED SIGNATURE(S) OF ACCOUNT HOLDER(S) X ____ X ____ |
|---|---|---|
| 10b. Routing Transit Number | Account Number | Financial Institution Name and Address |

11. LIFE INSURANCE AND ANNUITIES INFORCE AND PENDING: If None, check here: [ ]

| Name | Company | Policy # | Pending | Issue Yr. | Basic Amount | ADB Amount | WP Amount | Intention of Replacement or Change* |
|---|---|---|---|---|---|---|---|---|
| CONSECO | | | [ ] | | | | | [ ]Y [ ]N |
| (GREGG) | | [redacted] | [ ] | 1991 | 132,100 | | | [X]Y [ ]N |
| GREGG | MIDLAND | | [ ] | 2001 | 300,000 | | | [ ]Y [X]N |
| | | | [ ] | | | | | [ ]Y [ ]N |

* If Yes, complete applicable Replacement Form. Use Additional sheet, if necessary.
If this is a 1035 Exchange, also complete 1035 Exchange paperwork and submit with application.

12. OWNER IF OTHER THAN PROPOSED INSURED (Include relationship to proposed insured.)

| Name | Address | Social Security Number | Relationship |
|---|---|---|---|
| | | | |

13. PRIMARY BENEFICIARY—(Class 1) (Include relationship to proposed insured.)
DORRIE L. JONES WIFE
Beneficiary designations do not apply to riders covered under Family/Children's Protection Riders.

14. CONTINGENT BENEFICIARY—(Class 2) (Include relationship to proposed insured.)

15. SPECIAL REQUESTS OR DETAILS

**For Military Personnel (Including National Guard and Reserves)**

16. PERMANENT HOME OF RECORD (Street, City, State, Zip) | 17. MILITARY ADDRESS

18. JOB DUTIES | 19. Are you currently drawing extra duty or hazard pay? [ ] YES [ ] NO

20. MILITARY INFORMATION [ ] USA [ ] USN [ ] USAF [ ] Other (Specify)
Pay Grade ______ Rotation Date ______ Expected Discharge Date ______

21. Has the Proposed Insured been a member of a special forces, special or hazardous duty organization? [ ] YES [ ] NO
If yes, provide specific details.

22. Has the Proposed Insured been alerted to, volunteered for, or received formal orders to a hazardous area or overseas assignment? [ ] YES [ ] NO
If yes, provide specific details.

Scan 06/13/2006 13:57:45

Received 4/18/05 7:18:52 PM [Central Daylight Time] ... Pg 4/14 543    TO:Sammons Financial Gr P.4/14

*Must be completed for all proposed insureds, including CIR.*

| Question | Yes | No |
|---|---|---|
| 23. Has any person proposed for insurance: | | |
| (a) In the past 10 years used barbiturates, hallucinatory drugs, narcotics including cocaine, crack, ecstasy, opium derivatives, marijuana, LSD, PCP, or any derivatives of these drugs, or been advised by a medical professional to get, or undergone any treatment, counseling or hospitalization for drug abuse? .. | ☐ | ☒ |
| (b) In the past 10 years been advised by a medical professional to get, or undergone any treatment, counseling or hospitalization for alcoholism, excessive alcohol use or abuse? Or, drink on average more than 3 alcoholic drinks per day?...... | ☐ | ☒ |
| (c) Had any motor vehicle moving violations or accidents or been arrested for driving under the influence of alcohol or drugs within the last five years? . | ☐ | ☒ |
| (d) In the past 10 years been convicted of any criminal activity, or been held or served time in any type of incarceration, jail, penitentiary, prison, probation, or parole program? Or, have any criminal charges pending against them at this time? | ☐ | ☒ |
| (e) Flown a plane in the past 24 months or plan to fly in the next 12 months as a pilot, copilot, student pilot, military pilot, engineer or in any other capacity except as a regularly scheduled commercial airline pilot or fare-paying passenger? If yes, complete Aviation Questionnaire ........................ | ☐ | ☒ |
| (f) Any past, present or expected activity in racing, scuba or sky diving, or any other hazardous sport or hobby? (If yes, complete Hazardous Activities Questionnaire.) ........................ | ☐ | ☒ |
| (g) In the past 10 years been refused for life insurance or charged an extra premium for life insurance? ........................ | ☐ | ☒ |
| (h) Traveled to or resided for more than 30 days outside of the U.S., U.S. territories, Canada, or Japan within the past 12 months or plan to travel to or reside outside of the U.S., U.S. territories, Canada, or Japan in the next 12 months? If yes, complete the Foreign Travel and Residence Questionnaire .............. | ☐ | ☒ |
| (i) Have any bankruptcy pending or expect to file bankruptcy in the next 12 months? ........................ | ☐ | ☒ |

*Must be completed for all proposed insureds, including CIR, not subject to Tele-Underwriting or a Paramed Exam.*

| Question | Yes | No |
|---|---|---|
| 24. Within the last ten years, has any person proposed for insurance ever had or been treated by a medical professional for: | | |
| (a) Chest pain, heart murmur, stroke, high blood pressure, or any other disease of the heart, blood, or blood vessels? ........................ | ☐ | ☐ |
| (b) Peptic ulcer, indigestion, or any other disease of the stomach, intestines, gall bladder or liver? ........................ | ☐ | ☐ |
| (c) Emphysema, bronchitis, asthma, pleurisy, or any other disease of the chest or lungs? ........................ | ☐ | ☐ |
| (d) Kidney stone, diabetes; albumin, pus, blood or sugar in urine; venereal disease, or any other disease of the kidneys, bladder or reproductive organs? | ☐ | ☐ |
| (e) An immune deficiency disorder [Acquired Immune Deficiency Syndrome (AIDS), AIDS related complex (ARC)] or been told test results indicate exposure to the AIDS virus? ........................ | ☐ | ☐ |
| (f) Severe headaches, fainting spells, epilepsy, paralysis, nervousness, mental disorder, or any other disease of the brain or nervous system? .......... | ☐ | ☐ |
| (g) Cancer, tumor, or any other illness or injury not mentioned above? ........ | ☐ | ☐ |
| 25. Other than indicated above, has any person proposed for insurance: | | |
| (a) Been hospitalized in the past 5 years? ........................ | ☐ | ☐ |
| (b) Consulted a physician during the past 5 years? | ☐ | ☐ |
| (c) Had a change of weight in the past year? ........................ | ☐ | ☐ |
| (d) Had a parent or a brother or sister who before age 60 was diagnosed with or died from cardiovascular disease, stroke, cancer (except basal or squamous cell cancer of the skin), Huntington's Chorea, familial polyposis, or polycystic kidney disease? If yes, provide age at onset and current age if living. If deceased, age at death. | ☐ | ☐ |
| 26. Is any person proposed for insurance now under observation, taking treatment or medication, or been advised to have any tests, hospitalization, or surgery which has not been completed? ........................ | ☐ | ☐ |
| 27. Is any person proposed for insurance currently receiving or have an application pending for any illness or disability benefits or compensation? ........................ | ☐ | ☐ |

Details of questions answered "yes" in Section 23 through 28. Include question number, full names and addresses of physicians and names of individuals to whom history pertains.

| Must be completed for all proposed insureds, including CIR. | 28. Are medical records under any other name (maiden name, etc.)? ☐ Yes ☒ No If yes, please indicate full name. | Name and Address of Primary Physician and Facility Name (if not specified above, date last consulted) DR BARFON CHEYENNE WY | Telephone Number of Primary Physician ( ) |
|---|---|---|---|

Scan 06/13/2006 13:57:46
Scan 05/12/06 10:28:24
Scan 04/19/06 17:36:39

Received 4/13/06 7:18:52 PM [Central Daylight Time] [illegible] TO:Sammons Financial Gr P.5/14

04/13/2006 22:28 6012245357 THE PRODUCERS GROUP PAGE 07/07

IT IS DECLARED that statements and answers in this application, including statements by the Proposed Insured(s) in any medical questionnaire or supplement that become part of this application, are complete and true to the best knowledge and belief of the undersigned. IT IS AGREED THAT: (1) any waiver or modification of this application will not be effective unless in writing and signed by the President, or the Secretary; (2) no insurance shall be in effect under this application (except as may be provided in the receipt bearing the same date as this application) unless and until the application has been approved and accepted by the Company at its Executive Office and the policy is delivered to and accepted by the Owner and the full first premium has been paid while each person proposed for insurance is alive and while the state of health and other conditions affecting insurability are as stated in this application and examination, if required. (If a List Billing Authorization or Government Allotment is indicated in section [illegible] and has actually been signed and delivered for the correct amount, this shall be considered the same as payment of the full first premium); (3) the acceptance of any policy issued on this application shall constitute a ratification of any correction or amendment made by the Company. No change in amount, classification, plan of insurance, or benefits shall be effective unless agreed to in writing by the applicant.

I also acknowledge receipt of the Fair Credit Reporting Act and Medical Information Bureau Notifications.

TAXPAYER IDENTIFICATION NUMBER CERTIFICATION - Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) ☐ I am exempt from backup withholding, or (b) ☐ I have not been notified by the Internal Revenue Service that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) ☐ the IRS has notified me that I am no longer subject to backup withholding. (Please check appropriate response.)

FINANCIAL INSTITUTION DISCLOSURE - Insurance products and annuities are not a deposit or other obligation of, or guaranteed by a bank, any affiliate of a bank, or savings association and are not insured by the Federal Deposit Insurance Corporation (FDIC) or any other agency of the United States, a bank, any affiliate of a bank, or savings association, and involve investment risk, including possible loss of value. The approval or disapproval of any extension of credit by the bank or an affiliate is not based on whether or not this insurance is purchased through the bank or through any particular source.

AUTHORIZATION: To determine eligibility for insurance, I authorize any physician, medical practitioner, health care professional, hospital, clinic, or other medically related facility, laboratory, pharmacy or pharmacy benefit manager, insurance or reinsuring company, the Medical Information Bureau, Inc., consumer reporting agency, insurance support organization, independent administrator, or other organization, institution, or person, or employer having information available as to diagnosis, prescription history, medications prescribed, treatment and prognosis with respect to information regarding alcoholism, drug abuse, and psychiatric care of any physical or mental condition and/or treatment of me or my minor children and any other nonmedical information of me or my minor children to give to Midland National Life Insurance Company (the Company) or its legal representative, any and all such information. I also authorize the Company to conduct a personal telephone interview in connection with my application; and to release any such data to its reinsurers, the Medical Information Bureau, or other persons or organizations performing business or legal services in connection with my application, or as required by law when given a copy of this authorization. I understand that I may request to be interviewed in connection with the preparation of an investigative consumer report. I understand that I am entitled to receive a copy of the investigative consumer report upon request. This authorization is valid for 30 months from the date signed. I may revoke this authorization for information not then obtained by notifying the Company in writing. Such revocation will not be effective until received by the Company. I understand that I or any authorized representative will receive a copy of this authorization upon request.

FRAUD WARNING - AR, LA, NM, and OH Residents: Any person who knowingly, and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

CO Residents: It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a contractholder or claimant for the purpose of defrauding or attempting to defraud the contractholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

DC and TN Residents Warning: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

PA Residents: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such a person to criminal and civil penalties.

SIGNED AT (City, State): Rogers ARK 72732 DATE: 4-13-06

SIGNATURE OF PROPOSED INSURED if 18 YEARS OR OLDER: X [signature]

SIGNATURE OF PROPOSED ADDITIONAL INSURED/SPOUSE: X

SIGNATURE OF OWNER (if other than Proposed Insured)

SPOUSE SIGNATURE IF BENEFICIARY IS OTHER THAN SPOUSE AND COMMUNITY PROPERTY LAWS APPLY

Soliciting Agent: Does the applicant(s) have any existing life insurance or annuities? ☒ Yes ☐ No
Is any insurance applied for in this application intended to replace any life insurance or annuity now in force? ☒ Yes ☐ No
If a replacement is involved, submit a copy of this application and applicable Replacement Notice to the existing insurer.

| SIGNATURE OF SOLICITING AGENT | PRINT AGENT'S LAST NAME | CODE NO. | TELEPHONE NUMBER / CELL PHONE NUMBER |
|---|---|---|---|
| X [signature] | HEARSON | F-873 | [illegible] / ( ) |

| OTHER AGENT (Please Print) | % CREDIT | CODE NO. | GENERAL AGENT (Please Print) | CODE NO. |
|---|---|---|---|---|
| | | | | |



Apr 14 2006 8:58AM JOHN, INC. 307-637-2884 p.7